**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ST. PAUL FIRE & MARINE**
**INSURANCE COMPANY,**

      **Plaintiff,**

**v.**                                                             Case No:   6:13-cv-1088-Orl-31TBS

**CYPRESS FAIRWAY CONDOMINIUM**
**ASSOCIATION, INC., CYPRESS**
**FAIRWAY LTD. and VINELAND**
**PARTNERS LLC,**

      **Defendants.**

## ORDER

This matter is before the Court on Plaintiff St. Paul Fire & Marine Insurance Company's ("St. Paul") Motion for Summary Judgment, Defendants Cypress Fairway Condominium Association, Inc. ("Association"), Cypress Fairway Ltd. ("Cypress"), and Vineland Partners, LLC's ("Vineland") Response in Opposition to the Motion (Doc. 62),[1] and St. Paul's Reply in Support of the Motion (Doc. 66). Argument on the Motion for Summary Judgment as well as Plaintiff's Motion to Exclude the Opinion of Defendants' Expert[2] was held on June 30, 2015.

### I. Introduction

This case arises out of the faulty construction and resulting water intrusion at an apartment complex that was eventually converted to the Cypress Fairway Condominium Complex. St. Paul

---

[1] The Defendants also filed, separate from the Response, the affidavit of Daniel R. Webert in opposition to summary judgment. (Doc. 63).

[2] The Motion to Exclude (Doc. 64) was denied following the hearing (Doc. 78).

issued several policies to the project's general contractor, Winter Park Construction Company ("WPC"), that included commercial general liability ("CGL") protection. The policies extended coverage to entities on behalf of which the contractor, WPC, was required to secure coverage. The Defendants assert the policies cover Cypress (the original owner) and Vineland (its general partner). Further, due to earlier litigation and a settlement on the property damage to the buildings, Defendants assert St. Paul has a duty to pay the Association for the defense and indemnification of Cypress and Vineland. Under Florida law, this type of settlement agreement is referred to as a *Coblentz*[3] agreement and is enforceable against an insurer under certain conditions discussed below. In this lawsuit St. Paul seeks a declaration that it does not have any coverage obligations for the underlying suit. Conversely, the Defendants/Counterclaimants have asserted a breach of the insurance contract and seek coverage for the consent judgment.

## II. Facts

The buildings at issue were constructed in 1999 and 2000. (Doc. 54 at 3; Doc. 54-5 at 40). In 2004 the complex was sold to Cypress Madison Ownership Company, LLC ("Madison").[4] Madison converted the buildings from apartments to condominiums and began selling them off.

The three policies at issue ran from December 31 1999, each covering one year and lasting until the end of 2002.[5] While construction ended sometime in 2000, there is substantial debate about when the water intrusion and property damage occurred and when the damage was known or knowable. Defendants' expert Mr. Christopher J. Norris indicated that damage would have begun

---

[3] Named after *Coblentz v. Am. Sur. Co. of New York*, 416 F.2d 1059 (5th Cir. 1969).

[4] Madison is not a party to this suit.

[5] The policies are: 1) KK05800062 for 1999-2000; 2) KK05800111 for 2000-2001; and 3) KK05800159 for 2001-2002 (the "policies"). (Doc. 34-3 – 34-8).

within a short timeframe after the end of construction, stating: "moisture content above nineteen percent would have occurred shortly after construction due to exposure to the elements, and the progression of damage from that moisture content, therefore, would also start to occur shortly after construction." (Doc. 54-4 at 46). When pressed on the timing, Mr. Norris indicated the beginning and progression of the damages would be contingent on the weather for the timeframe following construction. (Id. at 47).

In 2010, the Association sued Cypress and Vineland and others for various claims related to the property damage.[6] The underlying suit contained two claims against Cypress and Vineland. Count V of the underlying complaint asserted that construction defects and deficiencies "implicate inspection, maintenance, and repair work that should have been performed and/or recommended by [Cypress and Vineland] when they owned and managed the Condominium." (Doc. 48-7 at 31). According to the underlying complaint, Cypress and Vineland had a duty to the Association as a "foreseeable future owner of the Condominium" which was breached by: 1) failing to undertake maintenance and/or repairs; 2) failing to report, stop, prevent, and correct the damage from the original construction; and 3) failing to maintain the Condominium in light of the construction deficiencies. Count VI alleged that Cypress and Vineland negligently supplied information which the Association relied on for the purchase of the condominiums, i.e., the Association alleged that it had relied on express or implied representations that the condominium was constructed in a good and workmanlike manner and free of water intrusion.

Ultimately Cypress and Vineland entered into a settlement agreement and consent final judgment for a total of $2.5 million. The Defendants' affidavit from the Association's attorney in

---

[6] *Cypress Fairway Condominium Association, Inc. v. Cypress Madison Ownership Co. et al.*, Case No. 2010-CA-010777-O.

the settlement negotiations, Daniel Webert, indicated this settlement amount was the result of several sources of information regarding the cost of repair. Mr. Webert stated he evaluated the cost of repairs based on a rehabilitation contractor that was doing work on site as well as a building envelope report from engineering firm Morris Hirschfield. Mr. Webert concluded that the repairs would run between twelve to twenty million dollars. Mr. Webert discussed repairs with WPC's counsel and expert and WPC estimated a fair settlement value of eleven to fifteen million dollars. Mr. Webert states that he engaged in settlement negotiations with Mr. Kean, counsel for Cypress and Vineland, that involved discussions of the repair costs. Mr. Kean concurred with the estimations that repair costs would run from fifteen to twenty million dollars. Ultimately, Mr. Kean negotiated a $2.5 million settlement for his clients that was formalized by the consent final judgment. Because Cypress was a single purpose entity with no assets, the Association took an assignment of rights to pursue recovery under the St. Paul insurance policy with WPC.

### III.     Standard

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56. Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the nonmoving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation

omitted). Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

### IV.     Analysis

Under Florida law, a party seeking insurance coverage from a consent judgment in the context of a *Coblentz* agreement must prove: (1) a wrongful refusal to defend; (2) a duty to indemnify; and (3) that the settlement was objectively reasonable and made in good faith. *See Sinni v. Scottsdale Ins. Co.*, 676 F. Supp. 2d 1319, 1324 (M.D. Fla. 2009) (citing *Chomat v. N. Ins. Co. of N.Y.*, 919 So.2d 535, 537 (Fla. 3d DCA 2006)).

> While similar, the first two required showings—the existence of coverage under the policy and the insurer's duty to defend—are distinct in that the duty to defend is broader than the issue of coverage. The insurer's duty to defend arises solely from " 'the facts and legal theories alleged in the pleadings and claims against the insured.' " The merits of the underlying suit are irrelevant. "If the allegations of the complaint leave any doubt as to the duty to defend, the question must be resolved in favor of the insured."
> . . . .
> By contrast, coverage—and the accompanying duty to indemnify—"is not determined by reference to the claimant's complaint, but rather by reference to the actual facts and circumstances of the injury.

*Mid-Continent Cas. Co. v. Royal Crane, LLC*, No. 4D13-3496, 2015 WL 3609062, at *4 (Fla. Dist. Ct. App. June 10, 2015) (citations omitted). With regard to the last prong, the party seeking coverage must make a prima facie showing that the settlement was both reasonable and not made in bad faith. Once the initial showing is made the burden shifts to the insurer to demonstrate the settlement was either unreasonable or made in bad faith. *See Bond Safeguard Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 6:13-CV-561-ORL, 2014 WL 5325728, at *6 (M.D. Fla. Oct. 20, 2014).

Plaintiff argues that there are several reasons that it is entitled to summary judgment as to count V of the underlying complaint. Plaintiff argues that the policies do not include Vineland as an additional insured because it was not an owner of the property. Additionally, while Plaintiff concedes the duty to defend as to Cypress, it asserts that the settlement was not reasonable or reached in good faith.

As to Count VI in the underlying complaint, St. Paul argues that it had no duty to defend or indemnify because the alleged negligence—negligent supply of information—did not cause property damage nor was it the result of an event as defined by the policies.

### A. Count V of the Underlying Complaint—Negligent Maintenance

#### 1. Duty to Defend

WPC was the named insured under the St. Paul policies. (*See* Doc. 34-3 at 74). The policies also covered, "[a]ll *Owners*, Contractors, or Equipment Lessors who require that you add them as an Additional Protected Person in a specific written contract entered into by you." (*See e.g.*, id.). Cypress falls within this coverage because it was the owner of the project, and the contract between Cypress and WPC required WPC to maintain CGL coverage inuring to the benefit of the "owner and the lender and its successors and assigns." (Doc. 63-2 ¶7.2.1.).[7]

Vineland is not the owner or lender on the project, so it is not ostensibly covered as an additional insured under the St. Paul policies. But, Defendants argue that WPC's obligation to indemnify Vineland and others under paragraph 3.18.1 of the contract for construction has the effect

---

[7] An insurer's duty to defend is typically evaluated based on the allegations in the underlying complaint. However, when a party alleges coverage as an additional insured, as Cypress and Vineland have, the Court may look to other evidence. "[T]he creation of the basic insurer-insured relationship and the ensuing duty to defend cannot be left to the imagination of the drafter of a complaint, and as to *who* is an insured, the facts as they actually exist must be determinative." *Nateman v. Hartford Cas. Ins. Co.*, 544 So. 2d 1026, 1027 (Fla. Dist. Ct. App. 1989) (citation omitted).

of extending coverage to Vineland. (Doc. 63-1; *see also* Doc. 63-2 ¶3.18.1 (requiring contractor to indemnify owner, officer, directors, shareholders, partners, and many others)). This broad and general indemnification provision, however, does not convert all the indemnitees into additional insureds under the St. Paul policies. Accordingly, St. Paul has no duty to defend and has no duty to indemnify Vineland in connection with the underlying lawsuit.

### 2. Duty to Indemnify

The policies are occurrence policies and only provide indemnification for property damage that occurs during the policy period caused by an event. For Count V, Plaintiff argues that Defendants cannot show that the damages occurred during the policy periods and that Defendants' failure to apportion covered and uncovered damages precludes coverage.

As an initial matter, there is some debate between the parties about which occurrence trigger theory, injury-in-fact or manifestation, is applicable. The Court is persuaded that the injury-in-fact rule is the appropriate trigger for coverage, thus the relevant question is whether there is record evidence that shows the damage occurred during the policy period. *See Trovillion Const. & Dev., Inc. v. Mid-Continent Cas. Co.*, No. 6:12-CV-914-ORL-37, 2014 WL 201678, at *5 (M.D. Fla. Jan. 17, 2014) (adopting injury-in-fact analysis for occurrence policies); *Axis Surplus Ins. Co. v. Contravest Const. Co.*, 921 F. Supp. 2d 1338, 1347 (M.D. Fla. 2012) (tracing divergent case lines on injury-in-fact trigger theory or manifestation trigger theory).[8] The Plaintiff must show that the property damage did not occur within the policy period to prevail at this stage. *See Vander Voort v. Universal Prop. & Cas. Ins. Co.*, 127 So. 3d 536, 538-39 (Fla. Dist. Ct. App. 2012) (to prevail at

---

[8] Even under the manifestation trigger theory, which evaluates coverage based on when the damage is known or knowable, *see Axis Surplus Ins. Co.*, 921 F. Supp. 2d at 1346, there is a dispute of fact as to the coverage. The expert opinion, indicates that the damages may have been known or knowable almost immediately upon completion of construction. (*See* Doc. 54-5 at 54).

summary judgment "it was [the insurer's] burden to conclusively prove that the loss *did not* occur during the policy period").

As to the timing of the damages, Defendants' expert Mr. Norris stated that the damages would have occurred soon after construction was complete. (Doc. 54-4 at 46). Construction was completed sometime in the year 2000. The policies cumulatively stretched from December 31, 1999 to December 31 2002. The expert testimony and report clearly indicate that damage could have happened within the policy timeframe.

### 3. Whether the Settlement was Reasonable and Made in Good Faith

The final element of enforceability of a *Coblentz* agreement, whether the settlement is reasonable and in good faith, is a fact-intensive inquiry. The Defendants' affidavit of Mr. Daniel R. Webert stated that during the settlement negotiations he was faced with analyzing the cost of repair with counsel for WPC and he discussed this with Mr. Kean, counsel for Cypress and Vineland. Discussion among counsel for WPC, the Association, and Cypress and Vineland show evaluation of the timing of the damages and allocation of responsibilities among the parties. Further no account of the settlement negotiations reveals bad faith or collusion. Accordingly, the responableness of the agreement is a disputed issue of fact that must be resolved at trial.[9]

### B. Count VI of the Underlying Complaint—Negligent Supply of Information

Plaintiff argues that Count VI of the underlying complaint does not involve property damage or an event and, accordingly, the alleged damages are not covered. The policies are occurrence

---

[9] As to the Plaintiff's argument about the limitations of coverage raised under the First Manifested Property Damage Endorsement in the policies, that matter is contingent on the timing of the alleged damages. Ostensibly, this provision would limit the potential recovery based on the timing of the manifestation of the damages. How this provision is applied or limits recovery is contingent on the facts of the manifestation of the damages, which cannot be determined at summary judgment. Accordingly, issues about how that endorsement impacts the available recovery are left for trial.

policies meaning that the duty to defend or indemnify is only triggered by "bodily injury" or "property damage" that occurs during the policy period and is caused by an "event" that takes place within the coverage territory. (*See, e.g.*, Doc. 34-3 at 49). The only damage at issue is "property damage," which is defined in the policies as:

- Physical damage to tangible property of others, including all resulting loss of use of that property; or
- Loss of use of tangible property of others that isn't physically damaged.

(Id.). Further, an event is defined as: "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Id.).

Count VI of the underlying complaint alleged that Cypress and Vineland maintained the property prior to their sale to Cypress Madison Ownership Company and that they "made express and/or implied representations that the units and Condominium's common areas were constructed in a good and workmanlike manner and in accordance with at least the minimum standards of the applicable building codes and other industry standards and were free from water intrusion and related damages." (Doc. 34-1 ¶95). The Association reportedly relied on this information to its detriment and Cypress and Vineland's "failure to exercise reasonable care or competence in supplying information [about the buildings] was a direct, proximate, and legal cause of the damages suffered by the Association and its members." (Id. ¶99).

These allegations do not invoke a duty to defend nor indemnify under any interpretation of the terms of the policies. *See Colony Ins. Co. v. Montecito Renaissance, Inc.*, No. 8:09-CV-1469-T-30MAP, 2011 WL 4529948, at *3 (M.D. Fla. Sept. 30, 2011) (ruling CGL policy did not cover economic injury). The alleged cause of damage asserted in Count VI was Cypress and Vineland's representations to the Association—representations about the state of the buildings did not cause

water intrusion and the resultant property damage. Further, representations are not accidents[10] and cannot therefore be "events" within the meaning of the policies. While the Association may have suffered economic damages based on Cypress and Vineland's representations, it did not suffer property damage caused by an event as defined in the policy.

**ORDERED,** that the Plaintiff's Motion for Summary Judgment (Doc. 54) is **GRANTED IN PART AND DENIED IN PART.** Judgment in favor of the Plaintiff as to Count VI of the underlying complaint and as to Vineland Partners, LLC, shall be entered. The Motion is **DENIED** in all other respects.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on July 20, 2015.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party

---

[10] The policies do not define the term "accident," accordingly the Court relies on the dictionary definition of the term. Merriam-Webster.com, http://www.merriam-webster.com/dictionary/accident (last visited July 15, 2015). The various definitions of "accident" involve unexpected or unplanned happenings and invoke suddenness. Negotiations and the attendant representations about the state of buildings in a complex real estate transaction are typically voluminous and are not accidental, and the allegations set forth in the underlying complaint do not describe accidental representations.